IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-134 |
| ) | |
| TERRY KENNETH SUGGS, JR. ) | |

### RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Rebecca L. Silinski, Assistant United States Attorney for said District, and files the following Response in Opposition to Defendant's Motion to Suppress (Doc. No. 59) and Memorandum of Law in Support (Doc. No. 60). For the reasons set forth below, the Court should deny the motion.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The Allegheny County District Attorney's Narcotics Enforcement Team (D.A.N.E.T)

---

1.    If the Court determines that a hearing is "necessary to assist the court in ruling upon a defendant's specific allegation of unconstitutional conduct," the government anticipates that the information contained herein would be presented to the Court. *United States v. Hines*, 628 F. 3d 101, 105 (3d Cir. 2010) (finding defendant did not "allege facts that, if true, would support a finding that the evidence in question was obtained in violation of the defendant's constitutional rights", ). Here, however, the defendant has not identified any factual disputes that would require the presentation of testimony, and has not met his burden with respect to any request for an evidentiary hearing. *See United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013)("A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress" . . . . and to obtain an evidentiary hearing on a motion to suppress, "[t]he burden is on the defendant to allege facts 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented'")(internal citations omitted). In order for the Court to properly discharge its function related to an issue of suppression, the Court must be apprised of the facts upon which the arresting officer acted. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). In this case, the Court is well-apprised of the facts and circumstance available to the officers by way of the documents attached to these pleadings, enabling the Court to discharge its duties in deciding the matter.

1

received information from a confidential source that CLARK is a cocaine supplier from Philadelphia, PA.  *See* Doc. No. 60-1 (Prelim. Hrg. Tr.), p. 30:6-12.  The confidential source had been in communication with CLARK approximately five (5) to seven (7) days before the transaction leading to the arrests in this case occurred.  *Id*.  The confidential source provided law enforcement with CLARK's telephone number (267) 752-0440 (the "telephone").  *See* Prelim. Hrg. Tr., p. 14: 7-11.  Consequently, on Thursday, February 21, 2019, law enforcement obtained an Allegheny County magistrate search warrant to obtain GPS/911, commonly referred to as "ping," data from the service provider for the telephone.  *See* Prelim. Hrg. Tr., p. 30:15-20.  The confidential source also informed law enforcement that CLARK drives a Chevrolet Traverse (the "Chevy") and that he has driven the Chevy to deliver cocaine to the confidential source in the past. *See Id*. at p. 23:5-9; *see also* Exhibit A[2] (Feb. 26, 2019 DANET Investigative Report – Not Complete), p. 2.

On Sunday, February 24, 2019, law enforcement began receiving ping data for CLARK's telephone, which showed that it was in the Greater Pittsburgh region.  The following day, law enforcement arranged, with the confidential source, to conduct the controlled purchase from CLARK.  *See* Prelim. Hrg. Tr., p. 5:14-20.  Around noon, the confidential source called CLARK's telephone and arranged to buy five (5) kilograms of cocaine from CLARK.  *See* Prelim. Hrg. Tr., p. 5:21-25, 6:1-3, 14: 7-11.  CLARK and the confidential source planned to meet in front of a residence located on the 1400 block of Grant Street in North Braddock between approximately 3:00 and 4:00 PM.  *See* Prelim. Hrg. Tr., p. 7:6-13.  The confidential source also informed law enforcement that CLARK's "cousin" was also in Pittsburgh with CLARK and was driving a

---

2.  The government provided this document to defense counsel on May 24, 2019.

Subaru Tribeca (the "Subaru"). *See* Exhibit B[3] (Feb. 26, 2019 DANET Investigative Report – Complete), p. 3.

Later in the afternoon, CLARK called the confidential source to inform him/her that he was approximately twenty (20) minutes away. *See* Prelim. Hrg. Tr., p. 7:14-20. Law enforcement conducting surveillance in the vicinity of the pre-determined location, observed CLARK arrive in the Chevy and park in front of the residence on Grant Street, where the transaction was scheduled to occur. *See* Doc. No. 60-2 (Affidavit of Probable Cause – Subaru Tribeca), p. 4. A second vehicle, the Subaru, also arrived and parked in front of the Chevy. *Id*.; *see also* Exhibit A, p. 3; Exhibit B, p. 2. A records check revealed that both vehicles were registered to Philadelphia addresses. *See* Prelim. Hrg. Tr., p. 9:5-9. Law enforcement conducting surveillance then observed the driver of the Subaru (SUGGS) exit the vehicle and enter the passenger seat of the Chevy. *See* Prelim. Hrg. Tr., p. 8:3-12; Exhibit A, p. 3.

Before the transaction could occur, law enforcement converged on the Chevy and placed CLARK and SUGGS into custody. The Subaru remained unoccupied with the keys in the ignition and engine still running. When asked about the Subaru, SUGGS stated that the vehicle was not his and that he did not know whose it was. *See* Prelim. Hrg. Tr., p. 9:5-9; Affidavit of Probable Cause for Subaru, p. 4; *see also* Exhibit B (Feb. 26, 2019 DANET Investigative Report – Complete), p. 3. Both vehicles were seized and towed to the Swissvale Police Department (SPD), where CLARK and SUGGS were also transported. Upon arrival at SPD, a SPD K9 Officer and SPD K9 conducted an on-line exterior sniff of both the Chevy and Subaru. The K9 indicated for

---

3. The government provided defense counsel this document on August 19, 2019. The government recognizes that defense counsel did not have this investigative report prior to filing the defendant's motion.

the presence of narcotics in both vehicles.  *See* Exhibit A, p. 4-5.  Law enforcement obtained search warrants for the vehicles.  *See* Doc. No. 60-2.

Law enforcement recovered five (5) kilograms of suspected cocaine from the Chevy and eighteen (18) kilograms from the Subaru, as well as $8,060 from the Subaru.  CLARK and SUGGS were transported to the county jail and charged with drug trafficking offenses.  A preliminary hearing, wherein defense counsel in this matter also represented the defendant, was held on March 5, 2019.  *See* Prelim. Hrg. Tr., p. 2.  The court determined that there was a "prima facie case on both defendants." *See* Prelim. Hrg. Tr., p. 45:17-20.

On April 19, 2019, law enforcement received the lab results, which confirmed that the substances seized on February 25, 2019, were twenty-three (23) kilograms of a mixture of cocaine and methamphetamine.  *See* Attachment B: Report of Laboratory Findings.  On the same day, a Criminal Complaint was filed, charging CLARK and SUGGS with violating federal narcotics law.  *See* Doc. No. 3.  On May 9, 2019, a federal grand jury returned a three-count Indictment, charging the defendants with conspiracy (Count One) and possession with intent to distribute at Counts Two (CLARK) and Three (SUGGS).  *See* Doc. No. 19.

## II.   LAW ENFORCEMENT MADE A PROBABLE CAUSE ARREST OF THE DEFENDANT AND LAWFULLY SEIZED THE SUBARU TRIBECA

The Fourth Amendment prohibits unreasonable seizures of both person and property.  U.S. Const. Amend. IV.  The basis for defendant's motion is that his arrest on February 25, 2019, was the result of an unreasonable seizure, and that law enforcement also unlawfully seized the Subaru. The questions presented to this Court, then, are whether law enforcement had probable cause to arrest the defendant and whether law enforcement had a valid basis for seizing the Subaru. The government submits that they did, as set forth in the following paragraphs.

A.	**DEFENDANT'S ARREST WAS BASED UPON PROBABLE CAUSE**

When law enforcement officers make a warrantless arrest, courts assess whether "at the moment the arrest was made, the officers had probable cause to make it" and if "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the [defendant] had been or was committing an offense." *Beck*, 379 U.S. at 91; *see also Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017). While probable cause requires "more than mere suspicion" of the arresting officers, it does not place the burden of having proof beyond a reasonable doubt to make the arrest. *Zimmerman*, 873 F.3d at 419 (finding there was probable cause even if the arguments "may well have been sufficient to raise a reasonable doubt that would have resulted in an acquittal at trial").

The Third Circuit has repeatedly held that "[t]he collective knowledge of the investigating officers is measured in determining probable cause for an arrest." *United States v. Whitfield*, 644 F.3d 741 (3d Cir. 2010)(internal citations omitted)(where the collective knowledge of one law enforcement officer is imputed to the officer who actually conducted the seizure). Therefore, "the immediate apparency of criminality should be measured, *at a minimum*, by the collective knowledge of the officers on the scene." *Id* (emphasis added).

Thus, the issue before the Court is whether the arresting officers had probable cause to believe that SUGGS had been or was engaging in criminal activity. In arguing that they did not, the defendant espouses a view that he was arrested for "merely arriving at the scene of a transaction that never occurred[4]" and for his "mere presence in the car [with CLARK]," which "does not

---

	4.	The successfulness of the transaction does not have any bearing on whether probable cause existed. Law enforcement knew that a controlled buy, involving a substantial amount of cocaine – five (5) kilograms – was scheduled to occur. With that knowledge, law enforcement intervened when they saw the vehicle (Traverse) and the person (CLARK) they knew

5

establish probable cause that he possessed drugs" or "that he shared [CLARK's] alleged purpose of distributing kilograms of cocaine and worked towards that goal." Doc. No. 60, p. 5-6, 8. The collective knowledge of the investigating officers, rather than the knowledge of just one[5] of the approximately fifteen (15) officers involved in the operation, shows that there was probable cause to arrest SUGGS.  Investigators had, after all, the following information prior to making the arrest:

1. CLARK lives in Philadelphia and drives the Chevy.

2. CLARK and the confidential source made arrangements for CLARK to supply the confidential source five (5) kilograms of cocaine.

3. CLARK previously provided the confidential source with his telephone number to contact him regarding drug transactions.

4. CLARK and the confidential source agreed to meet at a residence located on the 1400 block of Grant Street in North Braddock, between 3:00 and 4:00 PM on February 25, 2019, to conduct the drug transaction.

5. CLARK's "cousin" was in Pittsburgh with CLARK.

6. CLARK's "cousin" drives a Subaru.

7. CLARK, driving the Chevy, arrived and parked the Chevy across from predetermined location on the 1400 block of Grant Street.

8. The Chevy was registered to an address out of Philadelphia.

9. A Subaru arrived at the same time as the Chevy and parked in front of the Chevy.

---

would be arriving at that time and at that location to conduct the transaction.

5. The defendant "summarizes" the testimony of Detective Ray Bonacci "to show the Government's evidence against Mr. Suggs." The document speaks for itself and the government disputes the defendant's characterization of his testimony. With that being said, the defendant also states that "[a] state-court preliminary hearing provides the best evidence of the evidence underlying the prosecution of Mr. Suggs." Doc. No. 60, p. 2. The basic principle of a preliminary hearing, however, is not to determine guilt beyond a reasonable doubt but rather to protect the individual's right against an unlawful arrest and detention, thus it is hardly the "best" evidence. *Stewart v. Abraham*, 275 F.3d 220, 238 (3d Cir. 2001)(holding the standard, under Pennsylvania law, for the preliminary hearing is to "insure that the government can establish *sufficient* facts to justify further detention").

    10.    The Subaru was registered to an address out of Philadelphia.

    11.    The driver of the Subaru exited the vehicle, left the keys in the ignition and engine still running, and entered the passenger side of CLARK's Chevy.

    12.    When asked by law enforcement, SUGGS denied owning the Subara.

From this, one can determine that there is at least probable cause to find that "the activities of [CLARK and SUGGS] . . . could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Gibbs*, 190 F. 3d 188 (3d Cir. 1999)(holding that a jury could "infer from evidence of related facts and circumstance from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding"); *see also United States v. Bailey*, 840 F. 3d 99 (3d Cir. 2016)(same). Moreover, law enforcement officers rely upon their training and experience to evaluate and assess the situations and circumstances before them, enabling them to identify when "combinations of seemingly innocuous events may be criminal behavior." *See United States v. Valencia-Amezcua*, 278 F.3d 901, 908 (9th Cir. 2002)(explaining why the testimony of law enforcement officers, who have a heightened understanding of criminal activity, may be necessary to assist the jury in understanding complex criminal activity that may otherwise appear innocuous).

**B.    LAW ENFORCEMENT'S SEIZURE OF THE SUBARU, WHICH SUGGS DENIED OWNING WAS LAWFUL**

In most situations, the seizure of personal property is *per se* unreasonable under the Fourth Amendment; unless, it seized pursuant to a judicial warrant. *United States v. Richardson*, No. CR 15-0176, 2016 WL 223705, at *5 (D.N.J. Jan. 19, 2016). Seizure, of course, can occur in a variety of forms and "means one thing when it is the outcome of a search; it may mean something else when it stands apart from a search or any other investigative activity." *Edward Soldal et ux. v.*

7

*Cook County, IL, et al.*, 596 U.S. 56, 68 (1992).

When law enforcement have probable cause to believe that a container – or in this case, a car – holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Fourth Amendment to permit seizure of the property pending the issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it. *United States v. Richardson*, No. CR 15-0176, 2016 WL 223705, at *5. One such exigency is the automobile exception to the warrant requirement, which provides that "[a] vehicle's inherent mobility creates circumstances of such exigency." *See California v. Carney*, 471 U.S. 386, 393 (1985); *S. Dakota v. Opperman*, 428 U.S. 364, 367 (1976). Thus, an officer may seize the vehicle to prevent it from being driven away or stolen while law enforcement obtain a search warrant.

Moreover, in *Smith*, the Third Circuit explained that an officer's community caretaking duty provides another reason that an officer may believe it reasonable to impound a vehicle. *U.S. v. Smith*, 522 F. 3d 305, 314. (3d Cir. 2008). The court explained that both occupants of the vehicle were arrested and there was no one to move the vehicle or ensure its safekeeping. *Id.* Of particular concern to the officer was that this vehicle was parked in a dangerous area and subject to being damaged, vandalized or even stolen. *Id.*

Here, the Subaru was left with the keys in the ignition and engine running. While law enforcement observed SUGGS exit the vehicle, SUGGS denied owning or knowing who owned the Subaru when asked by law enforcement. It would seem, then, that SUGGS has abandoned that argument and is now asserting an interest in the vehicle.

Assuming arguendo, that SUGGS does have standing to challenge the seizure of the vehicle, law enforcement were still within the bounds of the constitution when they towed the vehicle back to SPD's garage. First, officers had probable cause to obtain a search warrant for the

8

vehicle and the automobile exception permitted them to secure the vehicle until they had a warrant to search it. Second, the officers had a duty to ensure the safety of the community as well as ensure that the vehicle which was parked on a neighborhood street with the keys in the ignition and engine running was not stolen. Had officers left the vehicle where it was, without towing it, the vehicle would have been left in a residential area of the North Braddock neighborhood of Pittsburgh susceptible to theft but, worse, to a child entering the vehicle and attempting to drive it.

### III.   CONCLUSION

WHEREFORE, for the reasons set forth herein, the United States respectfully submits that the defendant's motion to suppress should be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney


*s/ Rebecca L. Silinski*
REBECCA L. SILINSKI
Assistant United States Attorney
PA ID No. 320774