IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
              )
       v.           )     Criminal No. 19-134
              )
TERRY SUGGS, JR.         )

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY ORDER OF DETENTION

AND NOW, comes the United States of America, by and through Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Rebecca L. Silinski, Assistant United States Attorney for said District, and respectfully files the following Response in Opposition to Defendant's Motion to Modify Order of Detention (Doc. No. 102) (the "Motion").   As explained below, Mr. Suggs' attempt to secure release by relying upon the spread of the COVID-19 virus and the *possibility* of him contracting COVID-19 is misplaced and ultimately unconvincing, and the Court should deny his Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Present Case

On April 19, 2019, a criminal complaint was filed, charging the defendant, Terry Suggs, Jr., and his co-defendant, Jermaine Clark, with conspiracy to possess with intent to distribute cocaine.   *See* Doc. No. 3.   On May 9, 2019, a federal grand jury returned a three-count Indictment, charging Mr. Suggs and his co-defendant, Jermaine Clark, with conspiracy to distribute and possess with intent to distribute a mixture and substance containing five (5) kilograms or more of cocaine and 500 grams or more of methamphetamine (Count One) as well with possession with intent to distribute the same at Counts Two (Clark) and Three (Suggs).   *See* Doc. No. 19.   Each of these charges carries a mandatory minimum of ten (10) years'

imprisonment to a maximum of life; however, for a defendant with a prior conviction for a serious drug felony or a serious violent felony, that is final, each of these charges carries a mandatory minimum of fifteen (15) years' imprisonment to a maximum of life.   *See* Doc. No. 20 (citing 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(viii)).

On May 24, 2019, a detention hearing was held before the Honorable Cynthia Reed Eddy, Chief United States Magistrate Judge.   *See* Doc. No. 69 (Detention Hearing Transcript).   The United States Probation Office, Pretrial Services, prepared a full bond report and recommended detention.   Thereafter, Judge Eddy ordered Mr. Suggs detained pending trial.   *See* Doc. No. 52 (Order of Detention).   Consequently, Mr. Suggs has remained detained in the Allegheny County Jail ("ACJ"), on federal charges, since May 24, 2019.   As noted in Mr. Suggs' Motion, he was initially arrested by local authorities, for the same conduct and has been detained at ACJ since February 25, 2019.   *See* Doc. 102, ¶ 1.   In the nearly year since he was ordered detained by Judge Eddy, Mr. Suggs did not seek review of that Order.

In ordering Mr. Suggs' detention, Judge Eddy found that a rebuttable presumption existed, under 18 U.S.C. § 3142(e)(3), and that Mr. Suggs did not introduce sufficient evidence to rebut the presumption.   *See* Doc. No. 69, p. 20:12-15.   Pursuant to 18 U.S.C. § 3142(e)(1), the Court further held that the Government had shown by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.   *Id.*   Judge Eddy, in so ruling, considered the arguments made by counsel, the recommendation of the Probation Office, and factors to be considered, pursuant to 18 U.S.C. § 3142(g).

As to the nature and circumstances of the offense, this case involves a large quantity of narcotics – 23 kilograms of cocaine – which the Court considered "is a serious offense that poses

[a] threat to persons of the community if the Defendant were to be released." *Id.* at p. 21:3-7. The Court also "considered the weight of the evidence and the defense counsel's argument as to the weight of the evidence in light of the preliminary hearing in Allegheny County and the bond that had been set there." *Id*. at p. 21:8-11.   Specifically, the Court clarified: "I will note that a Federal Grand Jury has returned a true bill on the indictment, thus finding probable cause.   And I also note that the statutory characteristics that I must consider are different than those considerations that are imposed upon the judiciary of Pennsylvania." *Id.* at p. 21:11-16.[1]

As to Mr. Suggs' history and characteristics, the Court focused on his lack of any ties to the Western District of Pennsylvania, an extensive criminal history, including incurring new charges while on a form of supervision, lack of employment, and drug use.

As the Court noted, Mr. Suggs is a long-time resident of Pennsylvania, but, with ties to Philadelphia, and no ties to the Western District of Pennsylvania.   *See Id.* at p. 21:17-21.   Defense counsel noted, at the hearing, that Mr. Suggs' family could get an apartment for him in Allegheny County if the Court would have permitted him to remain on bond with conditions.   *See Id.* at. p. 11:20-25.   The Court did not find such arrangement suitable.

The Court also considered Mr. Suggs' criminal history.   *See Id.* at pp. 22-23.   Notably, this is not Mr. Suggs' first drug offense.   On August 31, 2006, Mr. Suggs was sentenced, in the Western District of Virginia, to thirty-seven (37) months' imprisonment and twenty-four (24) months' supervised release after entering into a plea agreement with the government on a drug conspiracy charge.   *United States v. Terrance Suggs,* Crim. No. DVAW304CR000047-003, Doc.

---

1.    Mr. Suggs again tries to argue that this Court should be guided by the decision made in Allegheny County; however, as Judge Eddy made clear, what occurred during and the considerations taken by the attorneys and judges during the proceedings in any of the state court proceedings have no bearing on this *federal* court's decision.

No. 1171 (W.D. Va. September 5, 2006).   Judge Eddy further noted that Mr. Suggs committed this offense "while Defendant was on bond."   Doc. No. 69, p. 22:16-18.   On May 23, 2007, Mr. Suggs was convicted on a guilty plea and sentenced to twelve (12) months' imprisonment and twenty-four (24) months' supervised released for making a threatening communication to a witness, which appears to be related to the previous case, and also was committed while Mr. Suggs was on bond for the previous offense.   *See* Doc. No. 69, p. 22:12-23:2.   Additionally, on September 9, 2015, Mr. Suggs was convicted for various DUIs, which resulted in a county prison sentence of two (2) days to six (6) months.

The Court also considered Mr. Suggs' employment history, "which is partially verified from the extent Defendant's sister said that he had employment with a transportation company." Doc. No. 69, p. 21:21-24.   Mr. Suggs does not have any verified employment history – indeed, a check of the PA Department of Labor and Industry Employment revealed no employment records on file.   During the detention hearing, the government presented evidence pertaining to Mr. Suggs' international travel.   Specifically, Special Agent Darcos Cruz, FBI, testified that in 2018, within a three-month period Mr. Suggs traveled to three (3) major hubs for cocaine trafficking: Montego Bay, Jamaica (February 16-19, 2018), and Los Cabos, Mexico (April 14-17, 2018), which are routes used to bring cocaine into the United States, as well as Cartagena, Colombia (May 2-8, 2018), which is a major hub for a source of cocaine.   *See* Doc. No. 69, p. 16:4-12.   As the Court noted, it considered Mr. Suggs international travel "with the caveat that we don't know for sure what the international travel was for."   *Id.* at p. 23:22-25.

On July 8, 2019, Mr. Suggs filed a Motion to Suppress and Supporting Brief as well as a Reply.   Doc. Nos. 59-60, 71.   The government filed its Brief in Opposition and the Court, thereafter, stayed future deadlines, including the hearing as well as the government filing a

surreply, as to Mr. Suggs, so that so that a single hearing can be held to address all pre-trial motions filed by both Defendant Suggs and Defendant Clark.   *See* Doc. Nos. 73, 76.

On April 6, 2020, Mr. Suggs has filed his Motion to be released from the ACJ to home detention based upon the *possibility* of him contracting COVID-19 and that he has "the very type of underlying health issues that make him especially susceptible to this virus, i.e. asthma and diabetes."   Doc. No. 102 at ¶ 12.   Mr. Suggs also argues that he is a "non-violent" offender and has committed "non-violent" offenses.   *See* Id. at ¶ 13, 14.   The government vehemently disagrees with this characterization and will address it more fully below.   In short, however, Mr. Suggs has been charged with a serious offense, carrying with it a mandatory minimum sentence of ten (10) years' imprisonment and, as set forth below, Mr. Suggs's argument for release is not persuasive, and lacks any facts supporting a legal basis for this Court to release him pending sentencing.

Consistent with this Court's Order (Doc. No. 46), undersigned counsel consulted with the U.S. Probation Office, to obtain its position as to Mr. Suggs's Motion.   The Probation Office stands by its original recommendation of detention, finding no condition or combination of conditions could reasonably assure the presence of the defendant and the safety of the community. Specifically, the Probation Office provided the following statement to the parties, by email:

> Pretrial Services prepared a full bond report on Mr. Suggs on May 23, 2019, recommending detention.   On May 24, 2019, after a full hearing before Chief U.S. Magistrate Judge Cynthia Reed Eddy, the defendant was ordered detained.   Pretrial Services has not received any information that would substantially change information contained in the Pretrial Services report originally prepared. Consequently, Pretrial Services maintains our recommendation of detention.   It is noted that Pretrial Services officers are not uniquely qualified to make clinical assessments, evaluate an "at risk" population based on health concerns, or make recommendations to the Court on health assessments.

Pre-trial Motions are presently due on April 17, 2020.   *See* Doc. No. 100.   Defendant

Clark filed a Motion to Compel Discovery and the Court has ordered the government to respond on or before May 1, 2020. *See* Doc. Nos. 107, 108, 109. Thus, it is likely that the defendants will seek an extension of time to file pre-trial motions until after the Court has ruled on the Motion to Compel Discovery.

B.      **COVID-19 and the ACJ Community**

The government is aware that three (3) inmates have recently tested positive for COVID-19 at ACJ. *See* https://www.alleghenycounty.us/jail/index.aspx (last visited April 13, 2020). As reported with the first positive testing, the inmate and the inmate's cell-mate have both been quarantined since the onset of their symptoms were seen. Since the positive test, ACJ has taken other steps aimed at mitigating the spread of the virus, including instituting a total lockdown and contact tracing will occur and additional precautionary screenings will be conducted for all inmates who had been housed on the same unit as the individual testing positive.

Prior to this positive test, ACJ had implemented various other measures to protect inmates and staff alike. The ACJ issued a COVID-19 alert on its webpage, which, as of the filing of the present motion, reads as follows:

> **Our Response**
>
> The Bureau of Corrections is charged with providing for the care, custody and control of persons committed to the Allegheny County Jail. Confined areas present challenges when it comes to mitigation and elimination of the spread of illness or disease, and COVID-19 is no exception.
>
> On March 13, 2020, we made the decision to restrict social and professional visits. On March 27, we announced that one of our staff members had a confirmed case of COVID-19. And while that individual did not have direct inmate contact, we also stepped up our response implementing additional measures including active screening for fever and respiratory symptoms in staff, contractors, inmates and individuals coming into the facility at intake. And with the Court's approval, we also began restricting legal visits, setting up alternative ways for individuals to communicate with their attorneys.

Additionally, we have increased the availability of authorized cleaning agents effective at disinfecting the virus, as well as regularly scheduled mandatory cleaning sessions across the entire facility. And while there are no restrictions for out-of-cell time due to COVID-19 concerns, we are encouraging physical distancing to employees and inmates across the facility. Educational materials are posted across the jail, and town hall meetings have been held on each pod to discuss frequent cleaning and physical distancing. Every housing unit has been appropriately supplied with bars of soap to increase hand washing and hygiene among the population. All pods are now on quarter recreation to reduce the potential interactions there. In order to mitigate the effects of no outside contact, inmates are being allowed one free daily five-minute phone call.

We continue to work closely with the Health Department and follow guidance from their team, as well as that provided by the PA Department of Health, the PA Department of Corrections and the CDC.

The health, safety and welfare of the inmates and our staff remains our biggest priority. We are deeply indebted to, and salute, our healthcare and corrections staff who are working tirelessly to care for those in our custody. We recognize the commitment, dedication and sacrifices that represents, and remain grateful for everything that they do.

https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/Jail-COVID-19-Alert.aspx (last visited April 13, 2020).   As noted, since the first positive test on Wednesday, April 8, 2020, ACJ went into complete lockdown, with no movement on or off any unit, unless of an emergency.

The Government is also aware that officials at the ACJ are diligently working to provide video conferencing to federal inmates for court appearances, including allowing time before those court appearances for inmates to consult privately with their counsel.   The Government has also learned, through discussions with Bill Mistick, Population Control Manager and Video Administrator at ACJ, that ACJ offers confidential video conferencing for inmates and their attorneys.   ACJ has nine (9) rooms dedicated to this video conferencing, and has been accommodating approximately 120 conferences a day.   The ACJ has also created a "Legal Privacy Request Form" that will make it even easier for attorneys to schedule confidential video

conferences        with        their        clients        housed        at        the        ACJ.        *See*
https://www.alleghenycounty.us/jail/index.aspx (last visited April 13, 2020).   In addition, the
ACJ has allocated a third official to assist with video conferencing.

Moreover, measures undertaken by other stakeholders will also serve to further reduce the
risk of a COVID-19 outbreak at the ACJ.   For example, courts have made efforts to reduce the
movement of prisoners in and out of the ACJ.   In federal court, Chief Judge Mark R. Hornak
issued an Administrative Order postponing all federal criminal trials scheduled to commence
through April 27, 2020.   (Misc. No. 2:20-mc-394-MRH).   Nearly every other District Court
Judge in this courthouse has issued similar orders continuing criminal proceedings.   Furthermore,
the Allegheny County Court of Common Pleas — the court which houses substantially more
prisoners at the ACJ than the federal court — has been closed by the Pennsylvania Supreme Court.
Moreover, pursuant to an Order of Court issued by President Judge Kim Berkeley Clark, "Until
further Order of Court, no inmates or juveniles will be transported from state correctional facilities,
county jails or prisons, Shuman Detention Center, or Hartman Shelter."   *See* Order of Court, Court
of Common Pleas Allegheny County, No. AD - 2020 - __PJ.   All of these measures serve to
substantially reduce the movement of prisoners in and out of the ACJ, thereby reducing the risk of
a COVID-19 institutionally-wide outbreak there.

The Government recognizes that COVID-19 carries an increased risk of transmission;
carries a higher fatality rate than many other viruses; and has resulted in a state of emergency.   As
reported in the news, some inmates are being considered for release, and have been released, from
the ACJ in response to COVID-19, but those inmates are those who are deemed to be at high risk
of contracting the virus *and* who are nonviolent, minor offenders (such as those on cash bail that
they cannot afford, or those on probation detainers for minor offenses) are also being detained on

local, county or state charges. *See* https://triblive.com/local/pittsburgh-allegheny/more-than-600-inmates-released-from-allegheny-county-jail-in-pittsburgh-to-slow-pandemic/ (last visited April 13, 2020).   The daily population of ACJ has been reduced from 2,208 to 1,680 inmates; although, ACJ does not report on how this number was achieved (i.e. some inmates may have been only held temporarily or their sentences expired, resulting in their release). *See* https://www.alleghenycounty.us/jail/index.aspx (last visited April 13, 2020).   Regardless, decision made by local and/or state authorities in release defendants is not controlling and Mr. Suggs, as a federal detainee, does not fall into this category.

### C.      COVID-19 and the Community

As of April 12, 2020, there are 22,833 confirmed positive cases of COVID-19 in Pennsylvania, 857 of which are confirmed positive cases in Allegheny County. *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited April 13, 2020).  In an effort to stop the community spread, on April 1, 2020, Gov. Tom Wolf has issued a stay-at-home order, for the entire state, requiring all but "life-sustaining" businesses to close.  *See* https://www.post-gazette.com/news/corona2020/2020/04/01/Allegheny-County-s-pittsburgh-pennsylvania-COVID-19-new-cases-data/stories/202004010096 (last visited April 13, 2020). Officials expect to see an "exponential increase" in cases in coming days and weeks driven by community spread, not just increased testing, including large clusters of cases in Allegheny County.   *See*   https://triblive.com/news/pennsylvania/pennsylvania-reports-103-new-covid-19-cases-large-clusters-in-allegheny-county (last visited April 13, 2020).   Allegheny County Health Department Director Debra Bogen warned, on March 18, 2020, that as many as forty (40) to sixty (60) percent of Allegheny County residents will contract COVID-19.        *See*

https://patch.com/pennsylvania/pittsburgh/40-60-pittsburghers-could-get-coronavirus-health-dept

(last visited April 2, 2020).

Releasing Mr. Suggs into, presumably, Allegheny County, to the undisclosed "local facilities" is illogical – sending him to reside in an already heavily at-risk community[2], whose medical resources are already strained and will certainly become more strained in the coming days and weeks, when a stay-at-home or shelter-in-place order exists and ACJ has instituted a lockdown of their facility – and wholly insufficient – Mr. Suggs has failed to present this Court with a verified release plan.

## III.    ARGUMENT

Mr. Suggs is not contesting that he has been lawfully detained under the provisions of 18 U.S.C. § 3142.   Rather, Mr. Suggs has filed a Motion to Modify Order of Detention, which the government construes as a motion for temporary release under 18 U.S.C. § 3142(i).   This provision of the Bail Reform Act, provides that, "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Mr. Suggs has not claimed that his release is necessary for preparing for his defense.   Mr. Suggs relies solely upon the prospect of him contracting the COVID-19 virus but has failed to meet his burden to show a compelling reasons for temporary release based upon this consideration.

---

2.      It is unclear, to say the least, where Mr. Suggs is requesting to be released.   He states, in his motion, that he can be released to "local facilities", which the government assumes is/are in Allegheny County.    *See* Motion, ¶ 17.   In the event that Mr. Suggs' "local facilities" are located in Philadelphia County, his argument is equally illogical.   Philadelphia County has reported              6,352              positive              cases.              *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx   (last  visited  April  13, 2020).

**A.      The Defendant Has Not Demonstrated any Compelling Reason for His Release**

Speculation, about how COVID-19 could impact a detention facility and accentuation of particular medical conditions, if one should contract the virus, are not compelling reasons that justify the release of a defendant, who should otherwise be detained, into a community that is already experiencing a public health crisis.  *See, e.g., United States v. Simpson,* Crim. No.  19-197, Doc. No. 54, p. 3 (W.D. Pa. Mar. 27, 2020) ("While the Court is sympathetic to [defendant's] medical concerns and claims regarding possible complications caused by the COVID-19 virus, such speculation regarding future conditions does not constitute a 'compelling reason' for temporary release."); *United States v. Crute*, Crim. No. 19- 299, Doc. No. 37, p. 3 (W.D. Pa. Mar. 26, 2020)(same).

Mr. Suggs cites to a single case from the Southern District of New York in support of his release.   In *United States v. Dante Stephens*, 15-cr-95 (AJN), the court notably explained that its initial decision to detain the defendant was a close decision.   *Stephens* at 3.   Importantly, the government's evidence for detention had been undermined by new evidence that arose after the detention hearing.   *Id*. at 1-2.   The Court should not rely on this opinion, as the Defendant overstates its importance as it relates to the impact of COVID-19 on the judge's decision.

In this District, however, undersigned counsel notes that as of the filing of this Response, twenty (20) defendants, who have been detained pending trial, have submitted similar motions, based upon the *possibility* of a COVID-19 outbreak, and each of them have been denied.[3]   There is nothing about Mr. Suggs case that sets him apart from those already decided in this District.

---

3.        Some of this District's most recent decisions, denying release, in cases where a defendant is detained pre-trial, include: *United States v. Dana Lamont Henderson*, Crim. No. 18-18, Doc. No. 67 (W.D. Pa. Apr. 13, 2020)(Hornak, J.); *United States v. Marquis Brown*, Crim. No. 18-77, Doc. No. 70, (W.D. Pa. Apr. 9, 2020)(Bissoon, J.); *United States v. Eugene Hall*, Crim. No 15-87, Doc. No. 3116 (W.D. Pa. Apr. 7, 2020)(Fischer, J.); *United States v. Oshay Love*, Crim.

Mr. Suggs does not claim to have contracted COVID-19, or to have been exposed to someone who has.[4]  Instead, he asserts that, as a result of asthma and diabetes, he "has the very type of underlying health issues that make him especially susceptible to this virus."  Doc. No. 102, ¶ 12.  The CDC has advised that "[b]ased on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited April 13, 2020).   For those with underlying medical conditions, including asthma and diabetes, the CDC further clarifies that individuals with such conditions that are "not well controlled" are those who may be at higher risk for severe illness.  *Id*.  Upon reviewing the information available to undersigned counsel, namely, the records provide by Mr. Suggs, Mr. Suggs' medical conditions, including asthma and diabetes, appear to be well-controlled at the ACJ.

---

No. 19-301, Doc. No. 51 (W.D. Pa. Apr. 3, 2020)(Fischer, J.); *United States v. Delmar Pritchett*, Crim. No. 19-280, Doc. No. 42 (W.D. Pa. Apr. 2, 2020)(Ambrose, J.); *United States v. Devonte Parker*, Crim. No. 19-173, Doc. No. 1137 (W.D. Pa. Apr. 1, 2020) (Stickman, J.); *United States v. Nathaniel Thomas*, Crim. No. 19-176, Doc. No. 38) (W.D. Pa. Mar. 31, 2020) (Horan, J.) (denying motion based on COVID-19 and documented seasonal bronchitis, finding "speculation concerning possible future conditions does not constitute 'compelling reasons' for temporary release"); *United States v. Raymont Harris*, Crim. No. 19-172, Doc. No. 47 (W.D.. Pa. Mar. 31, 2020) (Stickman, J.); *United States v. James Folks*, Crim. No. 18-001, Doc. No. 76 (W.D. Pa. Mar. 30, 2020) (Fischer, J,); *United States v. David Loveings*, Crim. No. 20-51, Doc. No. 73 (W.D. Pa. Mar. 30, 2020) (Horan, J.).

4.      Mr. Suggs makes the unsubstantiated report that "a new inmate was housed with the Defendant in the same cell. The inmate is Jose M. Flores and he was not preliminarily tested for the virus prior to his admissions into the Jail and into close proximity with Defendant."  Doc. No. 102, ¶ 11.  Undersigned counsel for the government raised this unsubstantiated report made by Mr. Suggs with Deputy Byham as well.   Deputy Byham has been informed – as has the United States – that the ACJ is employing numerous precautionary measures, as set forth in this Response, and if any movement occurred it would have been consistent with the precautionary measures.   In any event, Mr. Suggs is not alleging that Mr. Flores has contracted COVID-19.

During his receiving screening at the ACJ, Mr. Suggs reported having asthma but did not report having diabetes, although he did report a family history of diabetes.   *See* Doc. No. 102-2, p. 47-48, 67.   Mr. Suggs also reported that he was not presently on any medications or treatments. *See Id*. at p. 58.    He did indicate – as also noted by Judge Eddy at the time of the detention hearing – that he was a daily user of marijuana.   *See* Doc. No. 102-2, p. 65; Doc. No. 69, p. 23: 9-10.   Mr. Suggs, since his incarceration, has been prescribed various medications, including an inhaler, as well as those used to manage and treat diabetes, at the ACJ.   *See* Doc. No. 102-2, p. 10-11.

As to his asthma, Mr. Suggs claims that he "has been without an inhaler for asthma treatment for some weeks."    *See* Doc. No. 102, ¶ 16.   The medical records that he has provided to the Court, do not support this claim; instead, the records show that he has an active prescription for an inhaler to be administered twice per day:

| | | | day | | | |
|---|---|---|---|---|---|---|
| Ventolin HFA Inhalation | 108 (90 Base) MCG/ACT | 1 | twice per day | Esther Stanton PA | 11/19/2019 | 5/16/2020 |

Doc. No. 102-2, p. 10.   His records further show that "Patient seen in clinic for chronic care history of asthma. Patient doing well.   Patient has inhaler.   No complaint."   *Id*. at p. 34-35.

On April 13, 2020, undersigned counsel spoke with the Jason Byham, the Supervisory Deputy United States Marshal of Operations for this District to inquire about Mr. Suggs' above-mentioned claim – undersigned counsel is aware that defendants and defense attorneys often request the Marshals to intervene on their behalf for medical needs.   Supervisory Deputy Marshal Byham informed undersigned counsel that the Marshals have not received any complaints by the defendant and/or defense counsel on his behalf and are, thus, unaware of any issues with the inhaler, which are routinely prescribed.   Mr. Byham advised undersigned counsel that, if Mr. Suggs does have a concern related to his medical treatment, that concern should first be raised at

ACJ with the medical professionals there who are able to render medical opinions, diagnoses, and institute or modify treatment plans.

In *United States v. Jamar Perminter*, United States District Judge Nora Barry Fischer considered a similar request concerning a defendant who reportedly has asthma – in *Perminter*, the defendant "provided a one-sentence letter from a prior treater indicating that he was diagnosed with asthma" and had been treated at Children's Hospital for general care.   *See* Crim. No. 19-145-NBF, Doc. No. 74, p. 7 (Mar. 25, 2020).   Even so, Judge Fischer "question[ed] the severity of Defendant's asthma condition and symptoms since he admits that he continued to smoke marijuana."   *Id.* at p. 7.   Here, Mr. Suggs reports having asthma, although how long he has had asthma is unclear, and also attached to his Motion medical reports related to an August 3, 2013/ August 4, 2013, apparent hospitalization wherein a radiograph revealed "patchy opacity in the right midlung field which is concerning for developing pneumonia."   Doc. No. 102-1.

Despite his prior respiratory concerns, Mr. Suggs reported smoking marijuana "a lot", including the day before his arrest in February of 2019, during his receiving screening (*See* Doc. No. 102-2, p. 65), and "daily" to the United States Probation Officer responsible for preparing the bond report (*See* Doc. No. 69, p. 23: 9-10.).   Prior to the emergence of the COVID-19 outbreak, Mr. Suggs never raised with this Court any concern regarding ACJ's treatment of his medical conditions and, now, he has failed to demonstrate that his needs will not be met while detained or that the ACJ's precautionary measures regarding the COVID-19 virus are insufficient.   *See Green*, 19-cr-85, Doc. No 46, at 3 ("there is no indication that Green's medical needs are not being addressed at the ACJ; in fact, he is seemingly receiving appropriate medical care. While the Court is sympathetic to Green's medical concerns and claims regarding possible complications caused by the COVID-19 virus, such speculation concerning possible future conditions does not constitute

a 'compelling reason' for temporary release").   The government, in turn, questions the severity of

Mr. Suggs' asthma considering the fact that he continued smoking marijuana – into his respiratory

system – despite his respiratory concerns.

As to his diabetes, it appears that Mr. Suggs was actually diagnosed with diabetes, while

incarcerated at ACJ, and his blood sugar levels appear to be well controlled and managed by the

ACJ medical professionals, save for a few spikes in those levels.   *See* Doc. No. 102-2, p. 18-32.

According to the CDC, for a random blood sugar test, "[a] blood sugar level of 200 mg/dL or

higher indicates you have diabetes." *See* https://www.cdc.gov/diabetes/basics/getting-tested.html

(last visited April 13, 2020).   In reviewing his medical records, the number of tests revealing

blood sugar levels over 200, since the time period of March 13, 2019 through April 2, 2019 when

they were consistently in the 200s, have decreased significantly.   *See* Doc. No. 102-2, p. 18-32.

Additionally, the government notes that on March 12, 2019, Mr. Suggs was placed on a diabetic

diet, which he remains on.   *Id.* at p. 9.   Mr. Suggs has not alleged in his Motion any concerns

related to his treatment at ACJ for his diabetes; however, if Mr. Suggs should, in the future, have

any concerns related to his medical treatment, he can and should make a "sick call" to request an

evaluation or have any questions answered by the medical staff at ACJ.

Mr. Suggs' claims, as set forth in his Motion, are insufficient to outweigh the factors that

point clearly toward the necessity of continued detention.   Indeed, numerous judges in this District

considering petitions for emergency release have held that speculation regarding COVID-19 is not

a compelling basis for release from detention, even where a defendant has medical conditions that

may increase his risk, should he/she be diagnosed with COVID-19 in the future.   *See, e.g.*, *United*

*States v. George Washington Crute III*, 19-cr-299-1-WSS (W.D. Pa. Mar. 26, 2020), Doc. No. 37,

at 3 (denying release where defendant had Type II diabetes); *United States v. David Colaianni*,19-

cr-352-WSS (W.D. Pa Mar. 26, 2020), Doc. No. 40, at 3 (denying release where defendant is over 60, has high blood pressure, high blood sugar, and past respiratory issues); *United States v. Larnell Jones*, 19-cr-249-DWA, Doc. No. 50, at 5-6, (denying release under § 3142(i) where defendant has hypertension, sleep apnea and asthma); *United States v. Sherrod Green*, 19-cr-85-JFC, Doc. No. 46, at 2, 3 (W.D. Pa. Mar. 27. 2020) (denying release where defendant has documented history of asthma); *see also United States v. Jackson*, Criminal No. 18-216-DWA, Doc. No. 237, at 3-4 (W.D. Pa. Mar. 24, 2020);  *United States v. Harris*, Criminal No. 18-152-AJS, Doc. No. 986 (W.D. Pa. Mar. 20, 2020).

While the COVID-19 virus is new, health claims by detainees are not.  Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008).  These cases recognize that reasonably necessary treatments are available in prison, and often times a prison setting will provide superior care than a defendant can obtain on the outside.   *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999).   As Allegheny County faces exponential growth in the number of cases of COVID-19, its healthcare resources face the possibility of becoming overwhelmed.  Whereas, considering the precautions that have been taken to contain the spread of the virus to and within the ACJ, combined with the fact that the ACJ has dedicated medical staff and facilities, the ACJ, as of today, even with the three (3) positive cases, is in a better position to care for its prisoners than medical entities outside of the jail can for those released into the community.

Given the information contained herein, the government respectfully avers that Mr. Suggs presumably has not been able to smoke marijuana since he was arrested in February of 2019, hopefully relieving his asthmatic symptoms; Mr. Suggs' asthma and diabetes can be monitored

and treated at ACJ; and Mr. Suggs has not averred that he has COVID-19 nor that he has been exposed to someone who does have COVID-19.   Indeed, Mr. Suggs has not set forth any factual record to support this Court finding that his medical needs will not be met while detained at ACJ and that compelling reasons exists that warrants his release.

        **B.      Releasing the Defendant Would Overwhelm Pretrial Services and the Courts**

        Mr. Suggs asks to be released to "local facilities where he can reside during the pendency of this case." Doc. No. 102, ¶17.   Granting such relief, however, would place a substantial and unwarranted burden on the U.S. Probation Office and Pretrial Services, as well as the Court.   Mr. Suggs would be added to the number of defendants the Probation Office is already actively supervising during this period of time when conditions are not conducive to such monitoring.

        Similarly, should the Court grant release of Mr. Suggs, courts in this District – and others – would be flooded by motions and/or appeals of defendants seeking pretrial release.   Each defendant would make the generic argument, now being made by Mr. Suggs, that he should be released because of the COVID-19 pandemic.

        United States District Judge Donetta W. Ambrose recognized this, reasoning that "Certainly, if I were to entertain this request, many other defendants would flood the courts with similar requests.   I also must keep in mind the substantial burden that releasing Defendant and similarly-situated defendants would place on the U.S. Probation Office at a time when conditions already are not conducive to such monitoring."   *United States v. Danny Jackson*, Criminal No. 18-216, Doc. No. 237, at p. 4 (W.D. Pa. Mar. 24, 2020).[5]   Judge Ambrose cited to two (2) cases in this District and one (1) from the Third Circuit, denying relief on similar grounds, and to date,

---

        5.      In *Jackson*, the Defendant had actually demonstrated that he suffered from severe asthma (among other conditions).

the government is not aware of *any* cases in this District wherein the Court has granted release on a defendant's argument related to COVID-19.   *See Id.* (citing *United States v. Harris*, Crim. No. 18-00152-AJS (ECF No. 986) (Mar. 20, 2020); *United States v. Penney, et al.*, 2:19-cr-8-NR (ECF No. 1795) (Mar. 18, 2020); and *United States v. Davis*, No. 19-604, Order (3d Cir. Mar. 20, 2020)).

**C.      The Defendant Poses a Risk to Community Safety and Should Remain Detained**

As set forth above, and determined by Chief Magistrate Judge Eddy, the charges here are serious and fall within the specified crimes of The Bail Reform Act and, thus, give rise to the presumption of detention.   *See* 18 U.S.C. § 3142(e) ("it shall be presumed that no condition or combination of conditions will reasonably assure…the safety of the community").   At the time of his hearing, and, again, in his Motion, Mr. Suggs has offered no evidence to rebut the presumption. Instead, Mr. Suggs relies solely upon the COVID-19 pandemic, as a basis for his release.

Even if the Mr. Suggs is at an increased risk of contracting the disease inside the prison, that does not outweigh the original reasons for detention.   *See,, e.g.*, *Crute*, 19-cr-299, Doc. No. 37, at 3 ("Crute's current arguments for release do not outweigh the factors considered by Magistrate Judge Kelly in ordering his detention."); *Jones*, 19-cr-249, Doc. No. 50, at 6 ("given the Court's finding that no condition or combination of conditions will reasonably assure the safety of the community if Defendant were released, the Motion to Reconsider Detention Order will be denied"); *Jackson*, 18-cr-216, Doc. No. 237, at 4 ("although Defendant's health conditions rightfully are of concern, and the COVID-19 pandemic is, as the Government describes, extraordinary, these factors do not outweigh the factors discussed above and considered initially by Magistrate Judge Mitchell in ordering that Defendant continue to be detained"); *Harris*, 18-cr-152, Doc. No. 986, at 5 ("while Defendant's health conditions are of concern, and the pandemic of COVID-19 is, as the Government appropriately describes, extraordinary, these factors do not

outweigh the factors discussed and addressed by both Magistrate Judge Kelly and this Court findings that detention was, and remains, warranted").

The Defendant relies on *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), which granted temporary release based on changed circumstances. However, that case is readily distinguishable because there were **two** changed circumstances after the detention hearing in that matter:  (1) the COVID-19 pandemic **and** (2) new evidence that undermined the strength of the Government's case (a different individual, not the defendant, may have been possessed the firearm at issue), which led the court to conclude (unlike it had at the detention hearing) that the defendant **did not pose a danger to the community**.  *Id.* at *1-3.  The *Stephens* court relied on the fact that none of the defendant's prior convictions involved violent conduct or gun charges.  *Id.* at *2.[6]  Here, however, nothing has changed, in favor of the defendant, since the detention hearing regarding the factors set forth in 18 U.S.C. § 3142(g).

The nature and circumstances of the offense are the same.  As this Court is well-aware, drug trafficking continues to present a substantial risk of danger to the community even when considered apart from the corresponding risk of violence it generates.   "The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985); *see also United States v. Atkins,* 2015 WL 4920831, at *7 (W.D. Pa. 2015) (explaining, in addressing a bond motion, that "[d]rug trafficking certainly poses a

---

6. The *Stephens* case is also distinguishable because the facility at issue did not even permit a legal telephone call to the defendant and thus he could not prepare for his imminent supervised release hearing scheduled for March 25, 2020.  *Id.* at *3.  Here, there is no such pending court date, and the Defendant has not established that his current means of communication with counsel are inadequate.

substantial risk of harm to the community"); *United States v. Oliver*, Criminal No. 16-40, 2016 WL 1746853, at *8 (W.D. Pa. May 3, 2016) ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs like heroin and cocaine.") (citations and quotations omitted).

Additionally, many federal drug trafficking defendants present a substantial risk of recidivism if released on bond because many are not first-time offenders.   "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity.   Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S.Rep. No.225, 98th Cong., 2d Sess. 20); *see also United States Cymbalak*, Case No. 2:19-cr-00273-WSS, Doc. 33, p. 8 (W.D. Pa. Nov. 14, 2019) (finding, relative to a drug trafficking defendant, "little reason to accept Defendant's contention that his behavior going forward would be different" if released on bond).   Here, Mr. Suggs is not a first-time offender.

The weight of the evidence against the Defendant is also the same.   A grand jury indicted the Defendant, and thus there is probable cause to believe that he has committed the offense. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("Our holding that the indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e) is in accord with the unanimous position of the other circuits that have reached the issue.").   There was also additional evidence submitted at the detention hearing. There is no smoking gun new evidence that may exonerate the Defendant, like in *Stephens*.   If anything, the government has obtained additional evidence against the defendants, including the contents of the defendants' cellular telephones.

If the Court were to find that the COVID-19 pandemic provides sufficient justification for release from detention, hundreds of defendants, like Mr. Suggs, who have been detained pursuant to orders issued in this District in order to protect the community *from them*, would be released back onto the streets.   The speculative prospect of Mr. Suggs contracting COVID-19 does not diminish the public interest in keeping dangerous defendants off the streets.   No one wants COVID-19 to spread to anyone whether incarcerated or not.    The reality is that community spread of COVID-19 is occurring.   As a result, Mr. Suggs could contract COVID-19 while incarcerated or while on bond.   Regardless, the specter of a COVID-19 institutionally-wide outbreak and a defendant becoming infected is not a fire alarm that defendants, like Mr. Suggs, can pull because they wish to get out of jail.

## IV.   CONCLUSION

Mr. Suggs's argument for release is not persuasive, and lacks any facts supporting a legal basis for this Court to release him pending sentencing.   In the unfortunate event that Mr. Suggs contracts the virus, he will have medical care while incarcerated.   The prospect of contracting the virus while incarcerated at ACJ does warrant his release.   Thus, for the reasons set forth in this Response, the United States respectfully requests that Mr. Suggs's motion be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

*/s/ Rebecca L. Silinski*
REBECCA L. SILINSKI
Assistant United States Attorney
PA ID No. 320774